## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MIGUEL DOMINGUEZ and JOSE ARCE, individually and on behalf of all similarly-situated persons, | )<br>)<br>) Case No.<br>) |
| Plaintiffs, | ) Judge<br>) Magistrate Judge |
| v. | )<br>) Jury Trial Demanded |
| DISPATCH TAXI AFFILIATION, INC., CHI-TOWN TAXI BROKERAGE, LLC, DISPATCH AFFILIATION, LLC, DISPATCH TAXI MANAGEMENT, LLC, EXTREME TAXI AUTO REPAIR SHOP, LLC, LAKE REPAIR AND METER SHOP, LLC, TOTAL TAXI REPAIR AND BODY SHOP, LLC, WINDY CITY METER SHOP, LLC, SAVAS TSITIRIDIS, Individually, and EVGENY A. FREIDMAN, Individually | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT

NOW COME the Plaintiffs, MIGUEL DOMINGUEZ and JOSE ARCE ("Plaintiffs"), on behalf of themselves and a class of similarly situated persons, by and through their attorneys, ROBIN POTTER & ASSOCIATES, P.C., pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1, *et seq.*, and complain of Defendants DISPATCH TAXI AFFILIATION, INC., CHI-TOWN TAXI BROKERAGE, LLC, DISPATCH AFFILIATION, LLC, DISPATCH TAXI MANAGEMENT, LLC, EXTREME TAXI AUTO REPAIR SHOP, LLC, LAKE REPAIR AND METER SHOP, LLC, TOTAL TAXI REPAIR AND BODY SHOP, LLC, WINDY CITY METER SHOP, LLC, SAVAS TSITIRIDIS, Individually, and EVGENY A. FREIDMAN, Individually ("Defendants"), as follows:

## NATURE OF PLAINTIFFS' CLAIMS

1. This lawsuit arises under the FLSA and the IMWL. In this suit, Plaintiffs challenge two common practices that violate the FLSA and IMWL: (1) Defendants' payment of overtime wages at rates less than one and one-half times the employees' regular rates of pay; and, (2) Defendants' failure to pay at least the minimum wage during workweeks in which employees were required to purchase tools at substantial cost.

## JURISDICTION

2. This action is brought as an opt-in collective action pursuant to the FLSA, 29 U.S.C. § 216(b), with related claims under the IMWL, 820 ILCS § 105/1, *et seq*. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the State claims under 28 U.S.C. § 1367.

## PARTIES

3. Plaintiffs Miguel Dominguez and Jose Arce reside in Illinois. In addition, seven persons have opted into this suit, and their Consents to Join have been filed herewith ("Consent Plaintiffs.")[1].

4. The Named Plaintiffs and Consent Plaintiffs are current and former employees of Defendants. They work, or formerly worked, as automobile mechanics and technicians (in various capacities) at garage and repair facilities owned and operated by Defendants in Chicago, Illinois, within this judicial district.

---

[1] The Consent Plaintiffs are Johnny Garcia, Milton Contreras, Carlos Hernandez, Javier Lopez, Alfonso Mendoza, Mario Soto and Felix Ocasio

5. Defendants own and operate a taxi cab service known as "Dispatch Taxi." Dispatch Taxi operates a fleet of more than 500 taxis in Chicago, Illinois. Defendants have a central office and are domiciled at 4536 N. Elston in Chicago, Illinois. Defendants operate garage and repair facilities on Elston Street and on Lake Street, in Chicago, Illinois for the purpose of maintaining and repairing the fleet.

6. The individual Defendants, Mr. Tsitiridis and Mr. Freidman, are owners and principals of the inter-related corporate Defendants: Dispatch Taxi Affiliation, Inc., Chi-town Taxi Brokerage, LLC, Dispatch Affiliation, LLC, Dispatch Taxi Management, LLC, Extreme Taxi Auto Repair Shop, LLC, Lake Repair and Meter Shop, LLC, Total Taxi Repair and Body Shop, LLC, and Windy City Meter Shop, LLC.

7. At all times relevant hereto, the Plaintiffs and Consent Plaintiffs were and are covered "employees" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1) and the IMWL, 820 ILCS § 105/3(d).

8. At all times relevant hereto, Defendants, and each of them, were and are "employers" within the meaning of the FLSA, 29 U.S.C. § 203(d) and IMWL, 820 ILCS § 105/3(c).

9. Defendants, and each of them, effectuated and knowingly permitted the practices complained about herein.

**FACTUAL BACKGROUND**

10. The Plaintiffs and Consent Plaintiffs are and have been employed as automobile mechanics and technicians for Defendants throughout the relevant statute of limitations period.

3

11. The Plaintiffs' and Consent Plaintiffs' primary job duty is and has been to repair and maintain Defendants' Chicago-based fleet of more than 500 taxi cabs.

12. The Plaintiffs, Consent Plaintiffs and other similarly situated automobile mechanics and technicians work for Defendants in two garage/repair facilities located on Elston Street and Lake Street in Chicago, Illinois.

13. The Plaintiffs, Consent Plaintiffs and other automobile mechanics and technicians who worked for Defendants were subject to common policies, supervision and management, were compensated in the same or similar fashion, and are similarly situated in all material respects.

14. Defendants centrally processed payroll and administered Human Resource functions for the Plaintiffs, Consent Plaintiffs and other similarly situated automobile mechanics and technicians who worked for Defendants' Chicago-based taxi service at their office on Elston Street in Chicago.

15. Jose Arce was hired as an automobile mechanic by Defendants on or about February 2011 and is currently employed by the Defendants.

16. Miguel Dominguez was hired as a bodyman technician by Defendants on or about July 2012 and is currently employed by the Defendants.

17. The Consent Plaintiffs have been employed as automobile mechanics, bodyman technicians or metershop technicians during the relevant statute of limitations period, and were impacted by the practices complained of herein.

4

18. Defendants controlled and closely supervised the manner in which the Plaintiffs, Consent Plaintiffs and other similarly situated automobile mechanics and technicians performed their work. Defendants set their work hours and schedules, including for instance, restricting the amount of time they could take for their lunch breaks.

19. Defendants supplied uniforms and enforced standards for dress and appearance.

20. Many auto-mechanics and technicians were long term employees who worked exclusively for Defendants.

21. The work performed by Plaintiffs and other similarly situated auto-mechanics and technicians is integral to Defendants' business, which requires taxi cabs that are safe, clean and in good condition.

22. The Plaintiffs, consent Plaintiffs and other similarly situated auto-mechanics and technicians had no opportunity for profit or loss as employees of Defendants.

23. The Plaintiffs, Consent Plaintiffs and other similarly situated automobile mechanics and technicians were and are employees covered by the IMWL and the FLSA, and, as such, were and are entitled to be paid at least minimum wage for all hours worked and at 1.5 times their regular rates of pay for all hours worked in excess of 40 hours in any workweek.

**Failure to Pay Overtime Wages at 1.5 Times Plaintiffs' Regular Rates of Pay**

24. During their employment with Defendants, the Plaintiffs, Consent Plaintiffs and other mechanics and technicians regularly worked overtime, i.e., more than forty hours in a workweek, throughout the applicable limitations periods.

25. Throughout the applicable limitations periods, Defendants employed a variety of schemes to avoid paying Plaintiffs, Consent Plaintiffs and other mechanics and technicians at the required overtime rate of pay for hours worked in excess of 40 in a week.

26. In numerous pay periods within the past three years, Defendants paid automobile mechanics and technicians at a "straight time" rate of pay for hours worked, including overtime hours. Representative examples of this practice are attached hereto as Exhibit A. On their face, these records reflect that Defendants failed to pay any overtime premiums during these pay periods.

27. In numerous pay periods within the past three years, Defendants purportedly paid automobile mechanics and technicians a "salary." The amount of the "salary" during varied during each pay period depending on hours worked and approximated a straight time payment at the employees' regular rates of pay, with no time and one-half premium for overtime hours. Representative examples of this practice are attached hereto as Exhibit B. On their face, these records reflect that Defendants failed to pay any overtime premiums during these pay periods. Defendants payment of a "salary" was a ruse to avoid paying overtime at 1.5 times the employees' regular rates of pay.

28. In numerous pay periods within the past three years, Defendants paid automobile mechanics and technicians at an artificially reduced hourly rate of pay (which often varied from week to week, depending on hours worked) in order to avoid paying overtime premiums at 1.5 times the employees' actual regular rates of pay. Representative examples of this practice are attached hereto as Exhibit C. During these periods, the employees' overall compensation was substantially equal to straight time for all hours worked at their actual regular rates of pay.

Exhibit C. Defendants' payment at reduced hourly rates was a ruse to avoid paying overtime at 1.5 times the employees' regular rates of pay.

29. Defendants' practices of artificially manipulating the purported rates of pay caused Plaintiffs, Consent Plaintiffs and other similarly situated automobile mechanics and technicians to regularly work overtime hours at less than 1.5 times their regular rates of pay in violation of the FLSA and IMWL.

30. Defendants' practices of artificially manipulating the employees' purported rates of pay were part of a policy, practice and plan to evade the overtime requirements of the FLSA and IMWL.

31. Within the past three years, on numerous occasions, Defendants' various payroll machinations, described above, caused the Plaintiffs, Consent Plaintiffs and other similarly situated automobile mechanics and technicians to be paid at less than 1.5 their true regular rates of pay for overtime hours worked.

### Failure to Pay Minimum Wage Due to Policy of Requiring Employees to Purchase their Own Tools at Substantial Cost

32. Within the past three years, on numerous occasions, Defendants required the Plaintiffs, Consent Plaintiffs and other similarly situated automobile mechanics and technicians to purchase costly tools necessary to maintain and/or repair Defendants' vehicles.

33. Defendants provided parts for the automobiles but did not provide the tools necessary to install or repair them and so Plaintiffs were required to make tool purchases out of pocket.

34. The Plaintiffs, Consent Plaintiffs and other similarly situated automobile mechanics and technicians regularly made expenditures in excess of $5,000 per year to purchase and/or upgrade tools necessary for work performed at Defendants. Defendants failed to reimburse the Plaintiffs, Consent Plaintiffs and other similarly situated auto-mechanics for these substantial expenditures.

35. Given the high cost of tools, on occasion Plaintiffs' wages dropped below the statutory minimum during weeks in which they made substantial purchases. For instance, on March 18, 2015, Plaintiff Arce made a purchase of $1,569.93 from Snap-on Tools in Lake Villa, Illinois. This purchase exceeded his total compensation for that week.

36. All automobile mechanics and technicians employed by Defendants, including the Plaintiffs, were subject to the requirement that they purchase tools at substantial expense in connection with their employment.

37. Defendants' conduct complained of herein was willful and intentional, in that Defendants, and each of them, knew, required, approved and/or suffered or permitted Plaintiffs and other similarly situated auto-mechanics to work overtime at sub-standard rates of pay and required them to make significant expenditures on tools necessary to maintain and repair Defendants' fleet.

38. The individual Defendants, Mr. Tsitiridis and Mr. Freidman, have been and are involved in Defendants' operations. Mr. Tsitiridis and Mr. Freidman physically work at the garage on a regular and ongoing basis, have the power to hire and fire auto-mechanics and technicians, control their conditions of employment, determine their rates of pay and bases for compensation, imposed the requirement that they purchase and failed to provide certain tools

necessary for their employment, and make decisions regarding maintenance of payroll and employment records, among other things. The individual Defendants, Mr. Tsitiridis and Mr. Freidman, knowingly permitted the violations complained of in this lawsuit.

### COUNT I
*Failure to Pay Minimum Wage and Overtime  
in Violation of the Fair Labor Standards Act*  
**FLSA COLLECTIVE ACTION ALLEGATIONS**

39. Plaintiffs incorporate paragraphs 1-38 as if fully set forth herein.

40. Plaintiffs seek to represent an FLSA class comprised of and defined as:

all persons who have been employed by Defendants or their predecessors or successors as automobile mechanics and/or technicians and/or in a similar position at anytime from June 2013 through and including the present and until final resolution of the case, and who have not been paid the statutory minimum wage for all regular hours worked, or overtime wages at the rate of one and one half times their regular rate for all the time worked over 40 hours in individual work weeks (herein "FLSA Class").

41. This action is brought as a collective action pursuant to 29 U.S.C. § 216(b).

42. The named Plaintiffs and members of the proposed FLSA Class have been equally affected by the above-described violations of Defendants, which amount to a single decision, policy or plan to avoid paying overtime premiums and to avoid paying the full minimum wage by imposing substantial expenses for tools.

43. Plaintiffs believe Defendants have employed more than 35 persons within the above-stated class definition, and who constitute a class of similarly situated employees.

44. A collective action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

45. The books and records of Defendants are material to Plaintiffs' case as they disclose some of the hours worked by members of the FLSA Class and the amounts they were paid for that work.

46. Under the FLSA, 29 U.S.C. § 211(c), Defendants were required to maintain accurate records of hours worked by Plaintiffs.

47. Under the FLSA, 29 U.S.C. §§ 206 and 207, Defendants were required to compensate plaintiffs at a rate no less than the minimum wage for all hours and at a rate of 1.5 their regular rates of pay for overtime, i.e., hours worked in excess of forty (40) hours per week.

48. At all relevant times mentioned herein, Defendants failed to pay Plaintiffs and other similarly situated class members at the full and required overtime rate of pay, i.e., 1.5 times their regular rates of pay.

49. Defendants further failed to pay Plaintiffs and other similarly situated class members at least the minimum wage during weeks in which they were required to purchase tools in connection with their employment with Defendants.

50. Defendants regularly required, suffered and permitted Plaintiffs to work regular and overtime hours for which they were not compensated at the statutorily mandated rates of pay.

51. As a result of Defendants' policy and practice of failing to pay Plaintiffs minimum wage and overtime compensation, Plaintiffs have been damaged and have not received wages due and owing, pursuant to the FLSA.

52. Defendants' above-described violations were wilful, knowing and intentional.

**WHEREFORE,** Plaintiffs respectfully request this Court enter judgment in their favor and against Defendants for the following:

a. An award of back pay equal to the amount of all unpaid minimum wage, and regular and overtime compensation;

b. Finding Defendants' conduct alleged herein to be been willful, and award compensation for at least three years prior to the filing of this action;

c. An award of liquidated damages equal to the amount of all unpaid minimum wage and overtime compensation or, alternatively, prejudgment interest;

d. Attorneys' fees and costs of this action pursuant to 29 U.S.C. § 216(b); and,

e. Such other relief as this Court deems necessary and just.

## COUNT II
### *Willful Failure to Pay Overtime in Violation of the Fair Labor Standards Act*
### FLSA COLLECTIVE ACTION ALLEGATIONS

53. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 52 above as if fully set forth herein.

54. Under the FLSA, 29 U.S.C. §§ 206 and 207, Defendants were required to compensate Plaintiffs for all hours worked and to pay overtime for time in excess of forty (40) hours per week. Defendants regularly failed to pay Plaintiffs minimum wage and overtime at the correct and proper rates of pay for numerous hours worked, as set forth above.

55. Defendants' conduct complained of herein was willful and intentional, in that Defendants knew, required, approved and/or suffered or permitted Plaintiffs to work at less than the required overtime and minimum wage rates of pay. Defendants' conduct was in reckless disregard of Plaintiffs' statutory rights.

Case: 1:16-cv-06325 Document #: 1 Filed: 06/17/16 Page 12 of 15 PageID #:12

56. As a result of Defendants' willful violations, Plaintiffs have been damaged insofar as they have not received wages due and owing under the FLSA.

**WHEREFORE,** Plaintiffs respectfully request this Court enter judgment in their favor and against Defendants for the following:

- a. An award of back pay equal to the amount of all unpaid minimum wage, regular and overtime compensation;
- b. Finding Defendants' conduct alleged herein to be been willful, and award compensation for the three years prior to the filing of this action;
- c. An award of liquidated damages equal to the amount of all unpaid overtime compensation or, alternatively, prejudgment interest;
- d. Attorneys' fees and costs of this action pursuant to 29 U.S.C. § 216(b); and,
- e. Such other relief as this Court deems necessary and just.

## COUNT III
### *Violation of the Illinois Minimum Wage Law - Minimum, Regular & Overtime Wages*
### IMWL CLASS ACTION ALLEGATIONS

57. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 56 above as if fully set forth herein.

58. With respect to the IMWL claims, Plaintiffs seek to represent a class that is comprised of and defined as:

> all persons who have been employed by Defendants or their predecessors or successors as auto-mechanics or technicians or in a similar position at anytime from June 2013 through and including the present and until final resolution of the case, and who have not been paid the statutory minimum wage for all regular hours worked, or overtime wages at the rate of one and one half times their regular rate for all the time worked over 40 hours in individual work weeks (herein "IMWL Class").

59.  This action is brought as a class action pursuant to the Federal Rules of Civil Procedure Rule 23.

60.  Because the IMWL Class is so numerous that joinder of all class members is impracticable.

61.  The Named Plaintiffs and members of the IMWL Class have been equally affected by the violations of Defendants.

62.  Plaintiffs believe Defendants have employed more than 35 persons who have been subject to the Defendant's common unlawful pay practices during the respective Class Period. Defendants, through their agents and managers, have threatened and intimidated employees from asserting their statutory rights on numerous occasions.

63.  The Named Plaintiffs and the IMWL Class have been equally affected by Defendants' failure to pay overtime and minimum wages to the Plaintiffs and the Class.

64.  The issues involved in this lawsuit present common questions of law and fact; these common questions of law and fact predominate over the variations, if any, which may exist between the members of the class.

65.  The Named Plaintiffs and the IMWL Class and Defendants have a commonality of interest in the subject matter and the remedy sought.

66.  The Named Plaintiffs are able to fairly and adequately represent and protect the interests of the IMWL Class.

67.  Plaintiffs' counsel is competent and experienced in litigating large wage and hour and other employment actions.

68. If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions, creating a hardship to the IMWL Class, to the Court and to Defendants. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

69. Under the Illinois Minimum Wage Law, 820 ILCS 105/4, Defendants were required to pay Plaintiffs at least the minimum wage for all regular hours worked.

70. Under the IMWL, 820 ILCS § 105/4(a), Defendants were and are required to compensate employees at a rate of time and one-half their regular rate of pay for overtime hours, i.e., hours worked in excess of forty in a workweek.

71. Defendants failed to compensate Plaintiffs and other class members at the minimum and overtime rates of pay required by the IMWL, as set forth above.

72. Defendants were aware of, required, suffered and permitted Plaintiffs and the class to work at rates of pay less than those required by the IMWL.

73. Defendants' conduct complained of herein was willful and intentional, in that Defendants knew, required, approved and/or suffered or permitted Plaintiffs to work hours at rates of pay less than those required by the IMWL.

74. As a result of Defendants' willful violation of the IMWL, Plaintiffs have been damaged in that they have not received minimum and overtime wages due and owing pursuant to the IMWL.

**WHEREFORE,** Plaintiffs respectfully request this Court enter judgment in their favor and against Defendants for the following:

a. Actual damages;
b. 2% of the amount of underpayments for each month following the date of payment during which such underpayment remains unpaid pursuant to 820 ILCS § 105/12;
c. Attorneys' fees and costs of this action pursuant to 820 ILCS § 105/12(a); and,
d. Such other relief as this Court deems necessary and just.

**Plaintiffs Demand Trial By Jury on All Counts in this Action**.

    Respectfully submitted,
    ROBIN POTTER & ASSOCIATES, P.C.


    /s/ Robin Potter
    One of Plaintiffs' Attorneys

Robin Potter, Esq.
M. Nieves Bolaños, Esq.
Patrick Cowlin, Esq.
Robin Potter & Associates, P.C.
111 East Wacker Drive - Suite 2600
Chicago, Illinois 60601
(312) 861-1800
robin@potterlaw.org
nieves@potterlaw.org
patrick@potterlaw.org